IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>MARY M. HARRIS,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>CIVIL NO.: WDQ-13-2579</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>O'MALLEY, <em>et al.</em>,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Mary M. Harris,[1] *pro se*, sued Governor Martin O'Malley,[2] and others,[3] (the "Defendants") for violations of the Americans with Disabilities Act ("ADA"),[4] as applied by the Rehabilitation Act,[5]

---

[1] The docket mistakenly refers to Harris as "Harrison." The Court will direct the Clerk to amend the docket.

[2] Harris sued then Governor O'Malley in his official capacity as agent for the Maryland Judiciary Circuit Court for Baltimore City. ECF No. 1 ¶ 6.

[3] Harris also sued Lee Robinson, Cheryl Lotz, and Daniel Smith, in their individual capacities under the Family and Medical Leave Act. ECF No. 1 ¶¶ 7-9. There has been inconsistent spelling of Ms. Lotz's name; the Court will use Harris's spelling.

[4] 42 U.S.C. § 12101, *et seq.* (2008). Count One alleges the Defendants violated the ADA's reasonable accommodations requirement; Count Two alleges the Defendants fired Harris in retaliation for her seeking reasonable accommodations, in violation of 42 U.S.C. § 12203. ECF No. 1 at 6-7.

[5] 29 U.S.C. § 701, *et seq.* (2008).

and the Family and Medical Leave Act ("FMLA").[6]   ECF No. 1.

Pending are the Defendants' motion to dismiss, or for summary

judgment, ECF No. 12, and Harris's motion for leave to file a

surreply, ECF No. 21.   No hearing is necessary. Local Rule 105.6

(D. Md. 2014).   For the following reasons, the Defendants'

motion, construed as one for summary judgment, and Harris's

motion, will be granted in part and denied in part.

I.   Background

   A.   Facts[7]

On July 3, 2007, Harris began working as a Courtroom Clerk

in the Circuit Court for Baltimore City.   ECF No. 1 ¶ 10.   Since

1986, Harris has suffered from hypertension, migraines, and

diabetes; since 2008, Harris has also suffered from anxiety and

depression.   *Id*. ¶ 11.

In June 2008, Lotz, the Courtroom Clerks Division Manager,

evaluated Harris as "meeting or exceeding all job standards."

---

[6] 29 U.S.C. § 2601, *et seq*. (2008).

[7] The facts are from the complaint, Harris's opposition, her
surreply, and their attachments.   ECF Nos. 1, 1-1, 17, 23. In
reviewing a motion for summary judgment, the nonmovant's
evidence "is to be believed, and all justifiable inferences are
to be drawn in his favor."   *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255 (1986).

*Id.* ¶ 13.  Lotz noted, however, that "personal issues" had "a tendency to [affect] her attendance."  *Id.*[8]

In May 2009, Harris "was assigned to a high volume courtroom (felony criminal trial court) that required her to work frequent overtime," and occasionally miss meal breaks; requirements that "aggravated her underlying health conditions." *Id.* ¶ 14.  In late May or early June 2009, Harris asked Lotz to reassign her to a different court; "Lotz told her that the felony clerk position was the only available position and informed her that she could take it or leave it."  *Id.*

On June 15, 2009, Harris asked Lotz if she could take 12 weeks of FMLA leave because of her declining health.  *Id.* ¶ 15. On July 22, 2009, Harris submitted the required FMLA forms.  *Id.* On July 27, 2009, Harris suffered a stroke.  *Id.*

On July 30, 2009, Harris returned to work, and received approval for her July 22, 2009 request to take intermittent FMLA leave.  *Id.* ¶¶ 16, 19.  Harris gave Lotz her physician's notice recommending that Harris be permitted to eat lunch and dinner when working overtime.  *Id.* ¶ 16.  Lotz told Harris to discuss her physician's recommendation with her courtroom judge.  *Id.*

From August 31 to December 31, 2009, Harris was assigned to the same felony criminal courtroom.  *Id.*  Harris requested

---

[8] That year, Harris had taken FMLA approved leave to care for her father, who had suffered a stroke.  ECF No. 1 ¶ 13.

transfer to another department or position, part-time work, or a floater clerk for assistance during meals and breaks.  *Id.* ¶ 17. Lotz refused Harris's requests.  *Id.*

In October 2009, when Lotz was on leave, Harris told Smith, the Courtroom Clerks Supervisor, that she had requested--but not received--accommodations approved by the human resources office. *Id.* ¶ 18.  Although Smith "promised to process [the accommodations] through the proper channels," Harris "was never accommodated."  *Id.*

On November 24, 2009, Harris called Lotz to inform her that she was sick, and unable to work that day.  *Id.* ¶ 19.  Lotz, who did not have anyone to replace Harris, told Harris to come in, and promised to replace her when she could locate a replacement clerk.  *Id.*  Lotz refused Harris's request to use intermittent FMLA leave.  *Id.*  About 4:45 p.m., the presiding judge "observed that [Harris] was having trouble staying alert and told her to go home and get some rest."  *Id.* ¶ 20.  When Harris was preparing to leave, Lotz stood in the doorway and shouted, "if you don't get your ass upstairs, your ass is in trouble."  *Id.* Harris "felt threatened and severely ill," and "left the facility and went home."  *Id.*

On November 25, 2009, Ms. Lisa Stancil, Assistant Deputy Clerk, asked Harris to explain the previous day's events, and

asked whether Harris had argued with Lotz.  *Id.* ¶ 21.  "Ms. Stancil promised to investigate further."  *Id.*

On November 30, 2009, Harris told Lotz and Ms. Stancil that she would be on FMLA leave until December 15, 2009.  *Id.*

On December 4, 2009, Ms. Stancil told Harris that she was being fired for insubordination on November 24, 2009, but had the option to resign.  *Id.* ¶ 22, 39.  Harris refused to resign; on December 9, 2009, she was fired.  *Id.* ¶ 22.

At some time,[9] Harris filed an internal complaint to the State of Maryland Judiciary, Office of Fair Practices, alleging disability discrimination.  ECF No. 23-2.  In a January 13, 2010 letter, the Office of Fair Practices informed Harris that it had "determined that there was no probable cause that [she] was treated differently than others . . . and that [she] was offered a reasonable ADA accommodation as requested."  *Id.*  The letter further informed Harris that "[i]f [she] was dissatisfied with the findings . . . [she had] the right to file a Charge of Discrimination with the Maryland Human Relations Commission or the Equal Employment Opportunity Commission ["EEOC"]."  *Id.*

In August 2010, Harris initiated an EEOC Charge, alleging "that [her] termination violated [her] rights as a disabled

---

[9] The date is not in the record.

employee." ECF No. 17 at 12.  On May 4, 2012, the EEOC received

the Defendants' position statement.  ECF No. 23-3 at 1.[10]

On June 9, 2013, Harris received the EEOC's dismissal and

notice of right to sue within 90 days.  ECF No. 17 at 9, 12; *see*

*also* ECF No. 1-1.

B.   Procedural History

On September 5, 2013, Harris sued the Defendants for

Rehabilitation Act and FMLA violations.  ECF No. 1 ¶ 1.  On

March 8, 2014, the Defendants moved to dismiss the complaint, or

for summary judgment.  ECF No. 12.[11]  On April 11, 2014, Harris

---

[10] On October 14, 2010, H. Scott Curtis, Esq., Chief Counsel for
the Courts and Judicial Affairs Division, Maryland Office of the
Attorney General, received Harris's EEOC Charge.  ECF No. 23-3
at 4, 6.  On November 14, 2010, the position statement was due.
*Id*.  In May 2011, a new EEOC investigator, Christie D. Boyd, was
assigned to the case.  *Id*.  On December 16, 2011, Mr. Curtis
asked Ms. Boyd "for an extension until after the first of the
year" to file the position statement.  *Id*. at 2.  On February 6,
2012, Ms. Boyd emailed Mr. Curtis, noted that she had not
received the position statement, and asked when she could expect
it.  *Id*. at 3.  On March 12, 2012, Ms. Boyd again emailed Mr.
Curtis, requesting "the position statement as soon as possible."
*Id*. at 5.  On April 2, 2012, Mr. Curtis emailed Ms. Boyd, asking
whether she had "the perfect charge paper? My last note was that
we were waiting for it, but my last note may be inaccurate."
*Id*. at 6.  Ms. Boyd responded that "the only charge is one that
Ms. Harris signed on [August 16, 2010]," and noted that it had
been "served to [his] attention on October 14, 2010."  *Id*.  Ms.
Boyd offered to fax Mr. Curtis a copy of Harris's EEOC charge,
to which Mr. Curtis responded by providing his fax number.  *Id*.

[11] On March 10, 2014, Harris received a Rule 12/56 notice
informing her that the Defendants had filed a motion to dismiss
or for summary judgment, and that she risked dismissal or an
adverse judgment if she did not file a response and documentary
evidence.  ECF No. 13.

opposed the motion.  ECF No. 17.   On May 22, 2014, the

Defendants replied.  ECF No. 20.

On June 10, 2014, Harris moved for leave to file a

surreply.  ECF No. 21.[12]  On June 27, 2014, the Defendants

opposed her motion.  ECF No. 22.

## II.  Analysis

### A.   Surreply

Unless otherwise ordered by the Court, a party may not file

a surreply.  Local Rule 105.2(a) (D. Md. 2014).   "Surreplies may

be permitted when the moving party would be unable to contest

matters presented to the court for the first time in the

opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d

600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

Harris contends that a surreply is necessary, *inter alia*, to

respond to the Defendants' argument--made in reply--that

Harris's claim must be considered under section 504 of the

Rehabilitation Act, and to provide grounds for equitable

tolling.  ECF Nos. 21 at 1; 23 at 4-11.

Here, Harris's response argued that before filing suit she

was required to administratively exhaust her claims before the

EEOC; thus, her Rehabilitation Act claims were not time-barred

---

[12] Harris's surreply motion did not include her proposed
surreply.  On June 27, 2014, Harris submitted a surreply
memorandum; on June 30, 2014, Harris filed exhibits to the
memorandum.  *See* ECF No. 23 and attachments.

because the statute of limitations was tolled.   ECF No. 17 at 5-8.   In reply, the Defendants argued that--under section 504--administrative exhaustion was not required.   ECF No. 20 at 2-3. The Defendants further argued that--absent mandatory administrative exhaustion--grounds did not exist for equitable tolling.   *Id*. at 5.

Surreplies are inappropriate when arguments made in reply "are merely responses to new arguments made ... in [the] response," unless a party raises "new issues or legal theories in their reply."   *EEOC v. Freeman*, 961 F.Supp.2d 783, 801 (D. Md. 2013); *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 467 (D. Md. 2008). Although the Defendants' section 504 argument responded to Harris's administrative exhaustion arguments, their argument about equitable tolling *in the absence of mandatory administrative exhaustion* raised a new legal theory. Accordingly, Harris's motion will be granted on the issue of equitable tolling,[13] and denied in all other respects.[14]   *See Shah*

---

[13] Harris filed her proposed surreply separately from her motion. *See* ECF Nos. 21, 23.   The Court will consider Harris's arguments--and exhibits--in her proposed surreply that relate to equitable tolling.

[14] Harris's surreply memorandum also discusses issues that were first raised in the Defendants' motion (the application of the Maryland State Government article to the statute of limitations), her response (exhaustion requirement), or that she raised for the first time in surreply (the application of Title

v. *Collecto, Inc.*, No. CIV.A. 2004-4059, 2005 WL 2216242, at *17
(D. Md. Sept. 12, 2005)(granting in part motion for leave to
file surreply).

    B.    Summary Judgment

        1.    Legal Standard

    The Defendants' motion is captioned as a motion to dismiss
under Rule 12(b)(5) and (6)[15] or, in the alternative, for summary
judgment under Rule 56.[16]  A motion with this caption implicates
the court's discretion under Rule 12(d) of the Federal Rules of
Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v.
Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).
Ordinarily, a court "is not to consider matters outside the
pleadings or resolve factual disputes when ruling on a motion to
dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir.
2007).  However, under Rule 12(d), the Court, in its discretion,
may consider matters outside the pleadings; if the court does
so, "the motion must be treated as one for summary judgment
under Rule 56," and "[a]ll parties must be given a reasonable
opportunity to present all the material that is pertinent to the

---

I of the Civil Rights Act).  Thus, they are not new matters first
raised in the Defendants' reply.

[15] Fed. R. Civ. P. 12(b)(5), (6).

[16] Fed. R. Civ. P. 56.

motion." Fed. R. Civ. P. 12(d).[17]  When the movant alternatively captions its motion as one for summary judgment, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Harris was informed of her right to file a response to the Motion, and the opportunity to submit affidavits, declarations, and other documentary evidence.  *See* ECF No. 13.  As noted, Harris responded to the motion, and attached documentary evidence.  ECF No. 17.[18]

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery."

---

[17] A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice and Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

[18] Harris captioned her response as "Plaintiff's Opposition to Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment."  ECF No. 17 at 1.  Through her captioning, and the filing of evidence, Harris "had actual notice that the motion could be disposed of as one for summary judgment."  *Laughlin*, 149 F.3d at 261.

*E.I. de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir.2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f). Harris has not filed a Rule 56(d) affidavit.[19] It is therefore appropriate to address the Defendants' motion as one for summary judgment.

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[19] Harris's surreply memorandum states--without elaboration--that "the Court should not grant Defendants['] motion to [d]ismiss without a more complete factual record."  ECF No. 23 at 11. Even under the liberal construction afforded to *pro se* pleadings, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Harris's conclusionary, unsworn statement is insufficient as a Rule 56(d) affidavit.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the opposing party must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp.*, 477 U.S. at 322-23. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

### 2.   Defendants' Motion

#### i.   Rehabilitation Act Claims

The Defendants contend they are entitled to summary judgment because Harris's Rehabilitation Act claims are time-barred. ECF No. 12-1 at 5. Harris contends that her claims are not time-barred, because the statute of limitations was tolled while her EEOC Charge was pending. ECF No. 17 at 5.

Section 504 of the Rehabilitation Act bars disability discrimination by state instrumentalities that receive federal

---

[20] Rule 56(a), which "carries forward the summary[] judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

financial assistance.[21]  29 U.S.C. § 794.[22]  Because the

Rehabilitation Act does not contain a statute of limitations,

courts must "borrow" the most "analogous state statute of

limitations and apply it to the federal cause of action."

*Jeandron v. Bd. of Regents of Univ. Sys. of Maryland*, 510 F.

App'x 223, 226 (4th Cir. 2013)(*citing A Soc'y Without A Name v.*

*Virginia,* 655 F.3d 342, 347 (4th Cir. 2011), *cert. denied,* 132

S.Ct. 1960 (2012)).  "Maryland courts apply the three-year

limitations period governing general civil actions to ADA and

Rehabilitation Act claims."  *Id.* (citing cases); *see also*

*Raiford v. Maryland Dep't of Juvenile Servs.*, No. CIV.A. DKC 12-

3795, 2014 WL 4269076, at *7, n.7 (D. Md. Aug. 28, 2014).[23]

---

[21] For the purposes of this motion, the Defendants "assume
*arguendo* that the State judiciary has accepted federal funding
so as to waive its immunity" under the Rehabilitation Act.  ECF
No. 12-1 at 6.

[22] Harris's complaint does not specify which section of the
Rehabilitation Act supports her claim; thus, the Court assumes
it is section 504, which covers recipients of federal
assistance.  29 U.S.C. § 794.  Section 503 covers federal
contractors and provides no private right of action.  *Painter v.*
*Horne Bros., Inc.*, 710 F.2d 143, 144 (4th Cir. 1983) (per
curiam); 29 U.S.C. § 793.  Section 501 covers the federal
government.  29 U.S.C. § 791.

[23] The Defendants urge the Court to apply the two-year statute of
limitations contained in Maryland's Human Relations Act, Title
20 of the State Government article.  ECF No. 12-1 at 9; Md. Code
Ann., State Gov't § 20-1013 (West 2010).  The Defendants argue
that prior Maryland cases applying the general three-year
statute of limitations were "premised on a prior version of the
state disability statute" that lacked a private cause of action.
ECF No. 20 at 4.  However, as discussed *infra*, and as the

On December 9, 2009, Harris was fired.  ECF No. 1 ¶ 22.  On September 5, 2013, almost four years later, Harris filed this suit.  *See id*.  Thus, unless the statute of limitations was tolled, Harris's Rehabilitation Act claims are time-barred.

Harris contends that the statute of limitations was tolled because the Rehabilitation Act is subject to administrative exhaustion.  ECF No. 17 at 6-7.  The Defendants contend that section 504 is not subject to mandatory administrative exhaustion, and that Harris's "voluntary decision to submit her claims to the EEOC" is not grounds for equitable tolling.  ECF No. 20 at 3-6.

Section 505 of the Rehabilitation Act states the remedies available for claims under section 504.  29 U.S.C. § 794a.  It provides that:

> [t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

---

Defendants recognize, unless the limitations period was equitably tolled, Harris's claims are untimely under either a two- or three-year statute of limitations.  *See id*. at 5.  Thus, the Court need not decide whether the two-year limitations period applies.

14

29 U.S.C. § 794a(a)(2); *N.T. v. Balt. City Bd. of Sch. Comm'rs*,
No. CIV. JKB-11-356, 2011 WL 3747751, at *1 (D. Md. Aug. 23,
2011).[24]

Because Title VI does not require administrative
exhaustion, *see, e.g., Freed v. Consolidated Rail Corp.*, 201
F.3d 188, 193 (6th Cir. 2000), "[c]ourts have uniformly held
that non-federal employees need not exhaust administrative
remedies before bringing a private action under Section 504."
*Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 603-04
(E.D. Va. 2011)(collecting cases).[25]  Because Harris was not

_____

[24] Section 794a(a)(2) applies to Rehabilitation Act claims by
non-federal employees.  Section 794a(a)(1) applies to claims
against the federal government. *See Wilkinson v. Rumsfeld*, 100
F. App'x. 155, 157 (4th Cir. 2004)(noting that the
Rehabilitation Act creates a separate remedy for federal
employees).

[25] *See also Raiford*, No. CIV.A. DKC 12-3795, 2014 WL 4269076, at
*7 ("The Rehabilitation Act--unlike the ADA--has no
administrative exhaustion requirement.").  *But see Davis v.
Montgomery Cnty. Dep't of Transp.*, No. CIV. JFM-11-2637, 2012 WL
748392, at *3 (D. Md. Mar. 6, 2012)("[T]he timely filing of a
charge with the EEOC is a condition precedent to ADA and
Rehabilitation Act claims.")(*citing Snead v. Bd. of Educ.*, No.
DKC-11-0503, 2011 U.S. Dist. LEXIS 99165, at *8,2011 WL 3885811
(D. Md. Sept.2, 2011)); *Higgins v. Maryland Dep't of Agric.*, No.
CIV.A. L-11-0081, 2012 WL 665985, at *5 (D. Md. Feb. 28,
2012)(same).  *Snead*, however, cites *Kim v. Potter*, Civil Action
No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010),
for the proposition that the Rehabilitation Act requires
administrative exhaustion, 815 F. Supp. 2d at 894.
   In *Kim*, a United States Postal Service worker sued the
Postmaster General, and others, for violations of the
Rehabilitation Act, Civil Action No. DKC 09-2973, 2010 WL
2253656, at *1.  Because Kim was a federal employee, the Court
relied on 29 U.S.C. § 794a(a)(1) to determine the applicable

required to pursue her EEOC Charge before filing this suit, the
statute of limitations was not tolled.  *See Kolomick v. United
Steelworkers of Am., Dist. 8, AFL-CIO*, 762 F.2d 354, 356 (4th
Cir. 1985)("The filing of a complaint with an administrative
agency normally tolls the period within which a subsequent court
action must be brought [when] the existence of the agency
proceeding *conditions or prevents* the pursuit of the court
action.")(emphasis added)(citation omitted).

However, when "circumstances external to the party's own
conduct" make it "unconscionable to enforce the limitation
period against the party," the statute of limitations may be
equitably tolled.  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th
Cir. 2000).

The Defendants contend that "no 'extraordinary
circumstance[s]'" beyond Harris's control merit equitable
tolling.  ECF No. 20 at 6.  Harris contends that equitable
tolling is appropriate because the Defendants knowingly

---

remedies.  *See id.* at *4.  Unlike section 794a(a)(2), which
incorporate Title VI remedies, section 794a(a)(1) incorporates
by reference "[t]he remedies, procedures, and rights" applicable
to Title VII claims."  § 794a(a)(1); *Kim*, Civil Action No. DKC
09-2973, 2010 WL 2253656, at *4.  Title VII requires exhaustion
of administrative remedies.  *See Kim*, DKC 09-2973, 2010 WL
2253656, at *4; *Marshburn v. Postmaster Gen. of U.S.*, 678 F.
Supp. 1182, 1184 (D. Md.) aff'd, 861 F.2d 265 (4th Cir.
1988)(noting that 29 U.S.C. § 794a(a)(1) "adopts [the]
exhaustion requirement of Title VII").  Unlike *Kim*, Harris was a
non-federal employee; thus, 29 U.S.C. § 794a(a)(2)--and the
remedies and procedures stated in Title VI--apply.  *See
Wilkinson*, 100 F. App'x. at 157.

misrepresented--and provided insufficient information about--her right to file a law suit, delayed filing the position statement until after the statute of limitations expired, and misled Harris into believing "they wanted to mitigate or settle the complaint." ECF No. 23 at 4-11.

Equitable tolling is a narrow, discretionary doctrine, typically applied when "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant" or when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris*, 209 F.3d at 330 (*quoting Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)); *see also Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990)(en banc).

The January 13, 2010 Office of Fair Practices letter informed Harris that she had the right to file an EEOC Charge; relying on that letter, she attempted to enforce her rights through the EEOC. ECF Nos. 23 at 7; 23-2. Because the Defendants delayed filing their position statement until May 4, 2012, Harris did not receive the EEOC dismissal and notice of right to sue until June 5, 2013. ECF Nos. 1-1; 23-3 at 1. Although close, viewing the evidence in the light most favorable to Harris, as the Court must on a motion for summary judgment, a reasonable jury could find that the Defendants' wrongful conduct

17

prevented Harris from timely filing suit. *See Minter v. Wells Fargo Bank, N.A.*, 924 F. Supp. 2d 627, 643 (D. Md. 2013) (denying defendants' summary judgment motion on plaintiff's equitable tolling claim).[26]  Because Harris filed her complaint within 90 days after receiving the EEOC's dismissal and notice of rights, and as she has raised a genuine issue of disputed fact on whether equitable tolling applies, the Defendants are not entitled to summary judgment on Harris's Rehabilitation Act claims. *See S.R. v. United States*, 555 F. Supp. 2d 1350, 1358 (S.D. Fla. 2008) (summary judgment denied when plaintiff "raised a genuine issue of disputed material fact as to whether she is entitled to equitable tolling").

---

[26] *See also English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)("To invoke equitable tolling, the plaintiff must . . . show that the defendant attempted to mislead [her] and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.").  As noted above, the Defendants also contend that Harris's "voluntary" submission of an EEOC Charge does not support equitable tolling.  ECF No. 20 at 3-6.  Harris, however, proceeded under the impression that administrative exhaustion was required.  ECF No. 17 at 6-7.  Although "failure to exercise due diligence in preserving . . . legal rights" may bar equitable tolling, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), it is not clear that additional "due diligence" would have alerted Harris that her EEOC Charge was not required.  It has been observed that the Rehabilitation Act is not "a model of clarity," *Higgins v. Maryland Dep't of Agric.*, No. CIV.A. L-11-0081, 2012 WL 665985, at *5 (D. Md. Feb. 28, 2012); courts--including courts in cases cited by Harris--have inconsistently applied its provisions, *see supra* note 25; ECF No. 17 at 6, thus lending further support for equitable tolling.

ii.     FMLA Claim

The Defendants contend--and Harris concedes--that her FMLA claim is time-barred.  ECF Nos. 12-1 at 11-13; 17 at 2.

An FMLA action generally must be brought within two years of the last event constituting an alleged violation. 29 U.S.C. § 2617(c)(1). If the violation was willful, however, a plaintiff has three years to file suit. *Id.* § 2617(c)(2). "A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited."  That is, Harris "must show more than that [the Defendants] were merely negligent in failing to inform [her] of [her] FMLA rights." *Settle v. S.W. Rodgers Co., Inc.,* 182 F.3d 909, 1999 WL 486643, at *3 (4th Cir. 1999)(unpublished Table opinion).

Harris's December 9, 2009 termination was the last event constituting an alleged violation.  ECF No. 1 ¶¶ 22, 38.  Thus, even if the alleged violation was "willful," her September 5, 2013 complaint was filed after the statute of limitations had run.[27]  Accordingly, the Defendants are entitled to summary judgment on Harris's FMLA claim.

---

[27] Thus, the Court need not address the Defendants' arguments that Harris failed to properly serve Robinson, and that Robinson, Lotz, and Smith are not proper defendants under the FMLA.   *See* ECF No. 12-14.

III. Conclusion

For the reasons stated above, the Defendants' motion, construed as one for summary judgment, and Harris's motion, will be granted in part and denied in part.


_____3/4/15_____
Date

                                   _____
                                   William D. Quarles, Jr.
                                   United States District Judge